Henry H. Rossbacher, Esq. (SBN 060260)
James S. Cahill, Esq. (SBN 070353)
Talin K. Tenley, Esq. (SBN 217572)
THE ROSSBACHER FIRM
811 Wilshire Blvd, Suite 1650
Los Angeles, California 90017-2666
Telephone: (213) 895-6500
Facsimile: (213) 895-6161
Email: hhr@rossbacher.xohost.com
jsc@rossbacher.xohost.com
tkt@rossbacher.xohost.com

Attorneys for Plaintiff
MARIA SANCHEZ

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA SANCHEZ, individually and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br>　　v.<br><br>AEROVIAS DE MEXICO, S.A. DE C.V., doing business as AEROMEXICO, and DOES 1 through 100, inclusive,<br><br>　　　　　　　Defendants,, | Case No.: CV 07-7280 R (RCx)<br><br>CLASS ACTION<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT AEROVIAS DE MEXICO, S.A. DE C.V. MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**<br><br>Judge: Hon. Manuel L. Real<br>Date:　March 3, 2008<br>Time:　10:00 a.m.<br>Courtroom:　8 |

tw:6202.1/oppo sumary judgmnt　　　　0

**PLNTFF'S OPPO TO DFNDNT AEROVIAS DE MEXICO, SMMRY JDGMNT**

# TABLE OF CONTENTS

I. SUMMARY OF ARGUMENT ................................................................................. 1

II. STATEMENT OF FACTS ...................................................................................... 2

III. LEGAL STANDARD ............................................................................................ 4

IV. ARGUMENT ......................................................................................................... 6

   A. THE ADA DOES NOT PREEMPT PLAINTIFF'S CLAIMS ..................... 7

      1. Plaintiff's Claims Do Not Relate to the Price Charged Passengers .............. 8

      2. Plaintiff's Claims Do Not Relate to the Routes Serviced by Aeromexico . 15

      3. Plaintiff's Claims Do Not Relate to Services Provided by Aeromexico .... 15

      4. The ADA's Savings Clause Also Precludes Preemption ........................... 17

   B. THE MONTREAL CONVENTION DOES NOT PREEMPT
      PLAINTIFF'S CLAIMS ................................................................................ 18

V. CONCLUSION ..................................................................................................... 24

tw:6202.1/oppo sumary judgmnt                               i

**PLNTFF'S OPPO TO DFNDNT AEROVIAS DE MEXICO,
SMMRY JDGMNT**

# TABLE OF AUTHORITIES

**Federal Cases**

*All World Professional Travel services, Inc. v. American Airlines, Inc.,*
282 F.Supp.2d 1161 (2003) ........................................................................ 13, 14, 17

*Aloha Airlines, Inc. v. Mesa Air Group, Inc.,*
2007 U.S. Dist. LEXIS 19484 (2007) ........................................................ passim

*American Airlines, Inc. v. Wolens,*
513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995) ............................... passim

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ................................... 5

*Bechtel v. Liberty National Bank,*
534 F.2d 1335 (9th Cir. 1976) ..................................................................... 1, 4

*Bell Atlantic Corp. v. Twombly,*
__ U.S. __, 127 S.Ct. 1955, 167 L.Ed 929 (2007) ........................................ 5

*Brandt v. American Airlines,*
2000 U.S. Dist. LEXIS 3164 (N.D.Cal. 2000) ............................................... 20

*Brownstein v. American Airlines, Inc.,*
2005 U.S. Dist. LEXIS 30295 (N.D. Cal. 2005) .............................................. 9

*Buck v. American Airlines, Inc.,*
476 F.3d 29 (1st Cir. 2007) ..................................................................... 11, 12

*Californians for Safe & Competitive Dump Truck Transp. v. Mendoca,*
152 F.3d 1184 (9th Cir. 1998) ...................................................................... 11

*Celotex Corp. v. Catrett,*
477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ................................... 5

*Charas v. Trans World Airlines,*
160 F.3d 1259 (9th Cir. 1998) ................................................... 9, 13, 15, 16, 17

*Chicago & North Western Transp. Co. v. Kalo Brick & Tile Co.,*
450 U.S. 311, 101 S.Ct. 1124, 67 L.Ed.2d 258 (1981) ................................ 6, 7

*Cipollone v. Liggett Group, Inc.,*
505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed. 2d 407 (1992) ................................ 6

*Corsican Productions v. Pitchess,*
338 F.2d 441 (9th Cir. 1964) ..................................................................... 4, 5

*El Al Israel Airlines, Ltd. v. Tseng,*
525 U.S. 155, 119 S.Ct. 662, 142 L.Ed.2d 569 (1991) .............................. passim

*Elvig v. Calvin Presbyterian Church,*
375 F.3d 951 (9th Cir. 2004) ........................................................................ 1

## TABLE OF AUTHORITIES (continued)

*Florida Lime & Avocado Growers, Inc. v. Paul,*
  373 U.S. 132, 83 S.Ct. 1201, 10 L.Ed. 248 (1963) ...................................... 6

*Gilligan v. Jamco Dev. Corp.,*
  108 F.3d 246 (9th Cir. 1997) ...................................................................... 4

*Greer v. Federal Express,*
  66 F.Supp.2d 870 (W.D.Ken. 1999)........................................................... 14

*In re Air Transportation Excise Tax Litigation,*
  37 F.Supp.2d 1133 (D. Minn. 1999)............................................... 13, 14, 16

*In re Aircrash in Bali, Indonesia on Apr. 22, 1974,*
  684 F.2d 1301 (9th Cir. 1982) .................................................................... 21

*In re American Airlines Privacy Litigation,*
  370 F.Supp.2d 552 (N.D. Tex. 1995)............................................................ 9

*In re Jetblue Airways Corp. Privacy Litigation,*
  379 F.Supp.2d 299 (E.D.N.Y. 2005)............................................... 9, 14, 17

*In re Mexico City Aircrash of Oct. 31, 1979,*
  708 F.2d 400 (9th Cir. 1983) ...................................................................... 20

*Johnson v. American Airlines, Inc.,*
  834 F.2d 721 (9th Cir. 1987) ...................................................................... 20

*Lehman v. USAir Group, Inc.,*
  930 F.Supp. 912 (S.D.N.Y. 1996) .............................................................. 10

*Lockwood v. Wolf Corp.,*
  629 F.2d 603 (9th Cir. 1980) ........................................................................ 3

*Mbaba v. Societe Air France,*
  457 F.3d 496 (5th Cir. 2006), *cert denied*, 127 S.Ct. 959 (2007) ......... 18, 22

*Monzingo v. Aeromexico Air Group, Inc.,*
  112 P.3d 655 (2005) ................................................................................... 14

*Morales v. Trans World Airlines,*
  504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) ......................... passim

*Nationwide Life Ins. Co. v. Bankers Leasing Ass'n., Inc.,*
  182 F.3d 157 (2d Cir. 1999) ......................................................................... 5

*Nigeria Charter Flights Contract Litigation,*
  2007 U.S. Dist. LEXIS 79351 (E.D.N.Y. 2007) .................................. 18, 19, 21

*Paradis v. Ghana Airways Ltd.,*
348 F.Supp.2d 106 (S.D.N.Y. 2004)   19

Doc id

## <u>TABLE OF AUTHORITIES (continued)</u>

*Power Travel International, Inc. v. American Airlines, Inc. etc. et al.,*
257 F.Supp.2d 701 (S.D.N.Y. 2003) ......................................................................... 17

*Robertson v. Dean Witter Reynolds, Inc.,*
749 F.2d 530 (9th Cir. 1984) ...................................................................................... 5

*Schmidkunz v. Scandinavian Airlines System,*
628 F.2d 1205 (9th Cir. 1980) .................................................................................. 23

*Shah v. Pan Am World Servs., Inc.,*
148 F.3d 84 (2d Circ. 1998)...................................................................................... 19

*Tall Club of Silicon Valley v. American Airlines, et al.,*
2000 U.S. Dist. LEXIS 11302 (N.D. Cal. 2000)........................................... 9, 10, 15

*Weiss v. El Al Israel Airlines, Ltd.,*
433 F.Supp. 2d 361, 2006 U.S. Dist. LEXIS 32563 (S.D.N.Y. 2006) 18, 19, 20, 21

**Federal Statutes**

Federal Rule Civil Procedure
§12(b)(6) ................................................................................................................. 1, 4

Federal Rule Civil Procedure
§15(a)......................................................................................................................... 1

Federal Rule Civil Procedure
§56(c)......................................................................................................................... 5

Federal Rule Civil Procedure
§8(d)........................................................................................................................... 3

United States Code, Title 8
§1221(b)..................................................................................................................... 4

United States Code, Title 49
§1301 .........................................................................................................................7

United States Code, Title 49
§14501(c).................................................................................................................11

United States Code, Title 49
§40101......................................................................................................................17

United States Code, Title 49
§40120 ................................................................................................................. 7, 17

United States Code, Title 49 Airline Deregulation Act
§41713 ............................................................................................................. passim

Doc id

## TABLE OF AUTHORITIES (continued)

United Stated Code, Title 49
    §41713(b)(1)..............................................................passim

**State Cases**

*Aquino v. Asiana Airlines, Inc.,*
    105 Cal.App.4th 1272, 130 Cal.Rptr. 2d 223 (2003) ................................... 19, 23

*CibaGeigy Corp. v. Alter,*
    309 Ark. 426, 834 S.W.2d 136 (1992)..............................................7

Doc id

PLNTFF'S OPPO TO DFNDNT AEROVIAS DE MEXICO,
SMMRY JDGMNT

Plaintiff, Maria Sanchez, ("Sanchez" or "Plaintiff"), by counsel, submits her Opposition to Defendant Aerovias De Mexico, S.A. DE C.V., doing business as Aeromexico ("Aeromexico" or "Defendant") Motion To Dismiss, Or In The Alternative, Motion For Summary Judgment ("Motion")[1].

As an initial matter Defendant's Motion to Dismiss should be denied as untimely. The Ninth Circuit allows a motion to dismiss only before the responsive pleading is filed. Fed. R. Civ. P. 12(b)(6); *Bechtel v. Liberty National Bank*, 534 F.2d 1335, 1340-41 (9th Cir. 1976); *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 954 (9th Cir. 2004). Because Defendant has already filed its Answer and Affirmative Defenses here, its motion to dismiss is untimely and should be rejected. Declaration of Henry H. Rossbacher ("Rossbacher Dec."), ¶¶ 2&4, (Exs. 1 and 3)[2]. For the further reasons stated herein, Aeromexico's Motion should be denied in its entirety.

## I.    SUMMARY OF ARGUMENT

In the Complaint, Plaintiff alleges Breach of Written Contracts; Breach of Implied Covenant of Good Faith and Fair Dealing; Unjust Enrichment; and Money Had And Received. Plaintiff asserts no state tort claims and no federal claims in her Complaint. Plaintiff's Complaint alleges sufficient facts to state a claim for relief against Defendant and neither the "Convention for the Unification of Certain Rules for International Carriage by Air" (the "Montreal Convention") nor the Airline Deregulation Act, 49 U.S.C. §41713 (the "ADA") preempt Plaintiff's claims here.

---

[1] Paragraph references to Plaintiff's Class Action Complaint For: 1. Breach of Written Contracts; 2. Breach of Implied Covenant of Good Faith and Fair Dealing; 3. Unjust Enrichment; and 4. Money Had And Received are cited in this Opposition as "Complaint ___."

[2] If Defendant's motion to dismiss is granted, Plaintiff respectfully requests leave to amend her complaint under Fed.R.Civ. P.15(a).

tw:6202.1/oppo sumary judgmnt                                    1

Doc id

Most fundamentally, no federal law preempts Plaintiff's state law claims based on breach of contract. While Aeromexico cites a plethora of cases and statutes standing for the proposition that claims for *bodily injury* or loss/damage to *baggage or cargo* and damage caused by *delay* during the carriage of passengers are preempted by the Montreal Convention, none of those authorities have any application to the situation here where Plaintiff is claiming damage from the improper charge of an inapplicable tourism tax at the time she purchased her airline ticket. Likewise, while the ADA preempts claims based on state tort law, it does not preempt Plaintiff's claims of breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, and money had and received. Because none of the authorities cited by Aeromexico have any application to Plaintiff's state law claims, they cannot preempt Plaintiff's claims.

For the reasons more fully explained below, Defendant's Motion should be denied and Plaintiff's case should proceed.

## II.    STATEMENT OF FACTS

Plaintiff, on behalf of herself and on behalf of all others similarly situated filed a class action complaint against Defendant Aeromexico in Los Angeles Superior Court. Defendant removed the case to Federal Court on November 6, 2007 and the case was transferred to this Court on November 8, 2007. Defendant answered the Complaint on November 9, 2007. Rossbacher Dec., ¶2, (Ex. 1). Defendant filed an Amended Answer and Affirmative Defenses on February 1, 2008. *Id.*, ¶4 (Ex. 3).

Plaintiff alleges that Defendant collects a tourism tax imposed by the Mexican government from all passengers traveling on Defendant's airline on international flights between California and Mexico (hereinafter "Mexican tourism tax" or "UK tax"). Complaint ¶22. Defendant, in turn, is supposed to remit the UK tax receipts to the Mexican government. *Id.* Defendant collects approximately $22.00 from

tw:6202.1/oppo sumary judgmnt                2

**PLNTFF'S OPPO TO DFNDNT AEROVIAS DE MEXICO, SMMRY JDGMNT**

each passenger per flight. *Id.* However passengers who are residents (holding FM-2 or FM-3 visas) or citizens of Mexico, as well as diplomats, children under two years of age and persons staying in Mexico less than 24 hours are exempt from paying the Mexican tourism tax. Complaint ¶23.

Plaintiff alleges that in breach of their passengers' written contracts for air travel, Defendant has improperly collected from Plaintiff and other Class members the amount of the UK tax (approximately $22.00) for each airline ticket which was not applicable to Plaintiff (as a Mexican citizen) and Class members due to their exempt status. *Id.*, ¶¶27-32; Declaration of Maria Sanchez ("Sanchez Dec."), ¶¶2-8.

Plaintiff asserts causes of action, on behalf of herself and a Class of airline ticket purchasers in California, for (a) breach of written contracts, (b) breach of implied covenant of good faith and fair dealing, (c) unjust enrichment, and (d) money had and received. *Id.*, ¶¶12, 27-41. Plaintiff further alleges that Defendant is estopped from relying on any statute of limitation. *Id.*, ¶26. Plaintiff seeks compensatory damages, restitution, attorneys' fees and costs. See *Complaint*.

Defendant admits that the UK tax is a tax levied on airline passengers flying to Mexico. Motion at 1. Defendant further admits that the UK tax includes certain exemptions. *Id.* Despite this knowledge, Defendant failed to disclose to Plaintiff and other Class members that the Mexican tourism tax was not due from them as exempt passengers, and that as exempt passengers the tax should not have been collected from them and that they are entitled to a return of the amount they paid for that tax. Aeromexico does not deny (and thus admits) that while it is possible to determine which passengers are exempt from paying the fee[3], to change its

_____

[3] Defendant's failure to deny allegations of a complaint constitutes a judicial admission of the matters alleged. Fed. R. Civ. P. 8 (d). No additional evidence is required to prove the matters so admitted. *Lockwood v. Wolf Corp.*, 629 F.2d 603, 611 (9th Cir. 1980).

Doc id

PLNTFF'S OPPO TO DFNDNT AEROVIAS DE MEXICO, SMMRY JDGMNT

collection procedures would hinder competition. Aeromexico is mistaken because neither Aeromexico nor its competitors are entitled to collect the UK tax from exempt passengers to begin with. Aeromexico further admits that despite Plaintiff's exempt status, Plaintiff was charged the UK tax by Aeromexico. Rossbacher Dec., ¶3 (Ex. 2, Joint Report ¶14). Aeromexico collects the UK tax from its passengers, including exempt passengers thus violating its contracts with travelers, and resulting in a breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment and money had and received. Nothing in Aeromexico's Motion changes these facts.[4]

## III.   LEGAL STANDARD

As stated above, Defendant's motion to dismiss should be denied because it was not made before the responsive pleading was filed and thus is untimely. Fed.R.Civ.P. 12(b)(6); *Bechtel*, 534 F.2d at 1340-41.

If the Court does consider Defendant's motion to dismiss, it "should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claim that would entitle [him] to relief." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). It is only the extraordinary case in which dismissal is proper. See *Corsican Productions v. Pitchess*, 338 F.2d 441, 442(9th Cir. 1964).

---

[4] At least since 1953, air carriers have been required to provide departure manifests for flights originating in the United States, destined to any place outside of the United States, including Mexico. 8 U.S.C. §1221(b). The information to be provided with respect to each person listed on a manifest includes, *inter alia*: complete name, *citizenship*, passport number and country of issuance, country of residence, United States visa information (if any) and alien registration number, where applicable. Thus, Defendant is required to inquire into and to know the *citizenship* and passport/visa status of each of its passengers before international travel and with this information is definitively put on notice as to the exempt status of passengers with regards to the UK tax.

In determining whether to dismiss a case, a court's focus is on the lack of a cognizable legal theory or the absence of sufficient facts to allege a cognizable theory. See *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984). A complaint must only provide enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1968, 167 L.Ed 929, 943-44 (2007). A well-pleaded complaint should not be dismissed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely. *Id.*, at 1966. Only in the extraordinary case is dismissal proper. *Corsican Productions,* 338 F.2d at 442.

The party moving for summary judgment has both an initial burden of production and the ultimate burden of persuasion. Fed. R. Civ. P. 56(c). Only if the court finds there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law" is summary judgment appropriate. *Id.* Because summary judgment is a drastic devise, cutting off a party's right to present its case to a jury, the moving party bears the "heavy burden" of demonstrating the absence of any triable issue of material fact. *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n., Inc.*, 182 F.3d 157, 160 (2d Cir. 1999). Rule 56 must be construed "with due regard … for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury … ." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265, 276 (1986). Summary judgment is a drastic remedy and is therefore to be granted cautiously. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14, 91 L.Ed.2d 202, 216 (1986). The court must view the evidence presented on the motion in the light most favorable to the opposing party. *Id.*, at 255. At the summary judgment stage, the nonmovant's version of any disputed issue of fact is presumed correct. *Id.*

tw:6202.1/oppo sumary judgmnt          5

**PLNTFF'S OPPO TO DFNDNT AEROVIAS DE MEXICO, SMMRY JDGMNT**

# IV.   ARGUMENT

The courts have made clear that when at all possible, preemption of state laws should be avoided.  In interpreting the extent of express preemption, courts must be mindful that there is a strong presumption against preemption or displacement of state laws. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 523, 112 S.Ct. 2608, 2621, 120 L.Ed. 2d 407, 427 (1992).  This presumption against preemption applies to state causes of action. *Id.*  When, as is the case here, Congress has defined the extent to which state law is preempted, a court will interpret the effect of the preemption language by focusing on the plain wording of the provision and narrowly construing the precise language in light of the strong presumption against preemption. *Id.*  Unless the state law directly conflicts with, undermines or makes it impossible to comply with both the federal and state law, courts are reluctant to find state provisions as being inconsistent with federal law.

The United States Supreme Court has noted that preemption of state law by federal statute or regulation is not favored "in the absence of persuasive reasons — either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained." *Chicago & North Western Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 317, 101 S.Ct. 1124, 1130, 67 L.Ed.2d 258, 264-265 (1981) (quoting *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 83 S.Ct. 1201, 10 L.Ed. 248 (1963)).  The *Kalo Brick* Court continued as follows:

> The underlying rationale of the preemption doctrine, as stated more than a century and a half ago, is that the Supremacy Clause invalidates state laws that interfere with or are contrary to, the laws of Congress. The doctrine does not and could not in our federal system withdraw from the States either the power to regulate where the activity regulated is a merely peripheral concern [of] a federal law, or the authority to

tw:6202.1/oppo sumary judgmnt                6

Doc id

**PLNTFF'S OPPO TO DFNDNT AEROVIAS DE MEXICO, SMMRY JDGMNT**

legislate when Congress could have regulated a distinctive part of a subject which is peculiarly adapted to local regulation, but did not. *Kalo Brick*, 450 U.S. at 317 (internal citations and punctuation omitted); see also *CibaGeigy Corp. v. Alter*, 309 Ark. 426, 438, 834 S.W.2d 136, 14243 (1992). Here, where Plaintiff's state causes of action and the ADA and Montreal Convention are not inconsistent, but rather are complementary, preemption should be avoided.

### A.    THE ADA DOES NOT PREEMPT PLAINTIFF'S CLAIMS

The ADA contains a clause preempting any state law that is "related to the price, route or service of an air carrier." 49 U.S.C. §41713(b)(1). Aeromexico has not (and cannot) demonstrate any Congressional intent to regulate traditional breach of contract (and related) claims between parties. For this reason, Aeromexico's preemption argument is not even facially plausible.

The ADA unwound much of the Federal Aviation Act of 1958,[5] which in turn had reserved broad powers to the federal government to regulate interstate air transportation rates and promulgate and enforce various requirements. *Morales v. Trans World Airlines,* 504 U.S. 374, 378, 112 S.Ct. 2031, 2034, 119 L.Ed.2d 157, 164 (1992). Congress included a preemption clause in the ADA (Section 41713(b)(1) of the current Act[6]), which was designed to ensure that states could not frustrate the benefits of deregulation by enacting their own forms of economic regulation:

> Except as provided in subparagraph (a) in this subsection, a State ... may not enact or enforce a law, regulation, or other provision having

---

[5] In 1994, the ADA, originally located at 49 U.S.C. §1301, *et seq.*, was recodified at 49 U.S.C. §40120, *et seq.* and termed the Federal Aviation Authority Authorization Act ("FAAAA").

[6] 49 U.S.C. §41713(b)(1).

tw:6202.1/oppo sumary judgmnt          7

PLNTFF'S OPPO TO DFNDNT AEROVIAS DE MEXICO, SMMRY JDGMNT

the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart. [49 U.S.C. §41713(b)(1).]

Though this section does not purport to deprive the states from enforcing contracts between airlines and their passengers, Aeromexico grasps onto it. Aeromexico contends that Plaintiff's claims somehow equate state regulation of the "price, route or service of an air carrier" and therefore are preempted. Motion at 4-10. Aeromexico is mistaken.

### 1. Plaintiff's Claims Do Not Relate to the Price Charged Passengers

Aeromexico incorrectly alleges that Plaintiff's claims of improper collection of the UK tax equates state regulation of its "prices." Aeromexico relies on *Morales*, 504 U.S. 374, 378-79), and related cases, for the proposition that the ADA's phrase "relating to rates, routes, or services" expresses "a broad preemptive scope." Motion at 4. However, *Morales* was decided before the Supreme Court's decision in *American Airlines, Inc. v. Wolens,* 513 U.S. 219, 228, 115 S.Ct. 817, 824, 130 L.Ed.2d 715, 725 (1995) ("*Wolens*") which expressly recognized that as is the case here, the ADA's preemption clause does not "shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own self-imposed undertakings." Despite the *Morales* Court's "broad construction of the statutory language, the Supreme Court has not upheld preemption in all instances involving state enforcement of laws 'related to' airline prices, routes, or services[,]" specifically excluding breach of contract claims. *Aloha Airlines, Inc. v. Mesa Air Group, Inc.*, 2007 U.S. Dist. LEXIS 19484, *11-*12 (2007) (citing *Wolens*, 513 U.S. 219). Even in *Morales* the Supreme Court recognized that not all claims that may have economic repercussions are sufficiently related to an airline's prices, routes or services to be preempted. 504

tw:6202.1/oppo sumary judgmnt                    8

Doc id

U.S. at 390. "Some state actions may affect [airline fares] in too tenuous, remote or peripheral a manner to have preemptive effect." *Id.* (citation omitted). The Ninth Circuit points out that the *Morales* Court cautioned against overextending the scope of preemption under the ADA. *Charas v. Trans World Airlines,* 160 F.3d 1259, 1264 (9th Cir. 1998) (citing *Morales,* 504 U.S. at 388-90).

Here, Plaintiff alleges, *inter alia,* that Aeromexico entered into written contracts with Plaintiff, specifically, her airline ticket[7] which specified the date, flight number, origin, destination, and price of the airline ticket, and Aeromexico's own, self-imposed, "terms of use"[8] which stated in part that "[t]he user herby accepts to be bound by the terms and conditions of purchase imposed by Aeromexico including, but not limited to, the payment of all amounts when they fall due and the compliance of all rules regarding the availability of tickets, products and services." Complaint ¶28. Plaintiff further alleges that Aeromexico promised Plaintiff and other potential Class members that Defendant would only collect applicable taxes imposed by government authorities it is required to collect from passengers who owe the taxes. *Id.,* ¶29. The UK tax was never an amount "due"

---

[7] By purchasing an airline ticket, a contract was entered in to by Plaintiff and Defendant and the contract need not be attached to the complaint to satisfy federal pleading requirements. *Brownstein v. American Airlines, Inc.,* 2005 U.S. Dist. LEXIS 30295, *13-*14 (N.D. Cal. 2005); See also *Tall Club of Silicon Valley v. American Airlines, et al.,* 2000 U.S. Dist. LEXIS 11302, *8 (N.D. Cal. 2000) ("contractual obligations expressed or implied in the terms of an airline ticket are generally enforceable under state contract law".).

[8] Aeromexico's "terms of use", found on Aeromexico's website, further include the written contract terms between Aeromexico and its passengers, including Plaintiff. See *In re American Airlines Privacy Litigation,* 370 F.Supp.2d 552, 556 (N.D. Tex. 1995) (court found privacy policy contained on defendant's website was part of the contract of carriage and plaintiffs' claims of breach of contract based on these documents was not expressly preempted); *In re Jetblue Airways Corp. Privacy Litigation,* 379 F.Supp.2d 299 (E.D.N.Y. 2005) (contract formed at the moment plaintiffs made a flight reservation).

tw:6202.1/oppo sumary judgmnt          9

**PLNTFF'S OPPO TO DFNDNT AEROVIAS DE MEXICO, SMMRY JDGMNT**

Doc id

from Plaintiff or the exempt Class members. Aeromexico breached its written contracts by improperly collecting from Plaintiff and potential Class members the amount of the Mexican tourism tax (approximately $22.00) for the airline ticket (as evidenced on Plaintiff's airline ticket) which was not applicable and thus not collectible from Plaintiff due to her exempt status under Mexican law. *Id.*, ¶31; Sanchez Dec. ¶¶ 2-8. This Court need not look any further than the airline ticket issued by Aeromexico to Plaintiff and Aeromexico's "terms" with Plaintiff to determine that a breach of contract has taken place. After all, "[t]erms and conditions airlines offer and passengers accept are privately ordered obligations and thus do not amount to a State's enactment or enforcement [of] any law, rule, regulation, standard, or other provision having the force and effect of law within the meaning of [the ADA preemption provision]." *Wolens*, 513 U.S. 219, 228. "[T]he contractual obligations expressed or implied in the terms of an airline ticket are generally enforceable under state contract law." *Tall Club of Silicon Valley*, 2000 U.S. Dist. LEXIS at *8 (citing *Morales*, 504 U.S. at 386-87). Plaintiff's breach of contract action against Aeromexico rests on a self-imposed undertaking concerning the imposition of applicable taxes on passengers' airline tickets and therefore is not preempted under the Supreme Court's holding in *Wolens*. *Id.* For the same reason, each of the cases cited by Aeromexico in support of its argument that the ADA's preemption section applies are distinguishable as well.

Aeromexico mainly relies on *Morales*, 504 U.S. 374, 378 and *Lehman v. USAir Group, Inc.,* 930 F.Supp. 912 (S.D.N.Y. 1996) in support of its argument that the ADA preempts Plaintiff's claims. *Morales* was decided before *Wolens* in which the Supreme Court clarified that breach of contract claims are not preempted by the ADA. Neither *Morales* nor *Lehman* involved breach of contract claims and thus are distinguishable from the case at hand.

Moreover, the Ninth Circuit has rejected Aeromexico's argument that after

Doc id

**PLNTFF'S OPPO TO DFNDNT AEROVIAS DE MEXICO, SMMRY JDGMNT**

*Morales*, 504 U.S. 374, 112 S.Ct. 2031, the preemption clause at issue must be given an unusually broad interpretation. In a post-*Morales* case interpreting §14501(c),[2] the Court considered the position espoused by Aeromexico and held just the opposite:

> [R]ecent Supreme Court cases interpreting the preemptive scope of the ADA and ERISA preemption clauses … instruct that state regulation in an area of traditional state power having no more than an indirect, remote, or tenuous effect on a[n] [air] carriers' prices, routes, and services are not preempted … .

*Californians for Safe & Competitive Dump Truck Transp. v. Mendoca*, 152 F.3d 1184, 1188 (9th Cir. 1998). This holding is directly applicable here, where the state claims alleged have, if any, a tenuous and indirect effect on prices and services.

Aeromexico also cites to *Buck v. American Airlines, Inc.*, 476 F.3d 29 (1st Cir. 2007) in support of its preemption argument. However, *Buck* is distinguishable because it did not "involve the type of pure, contractual claim that is present here." *Aloha Airlines*, 2007 U.S. Dist. LEXIS at *13. The Circuit made clear that the suit was an attempt to enforce federal regulations not a contract claim. In *Buck*, plaintiffs' supposed contract claims relied on a single word in the tickets, *i.e.* "nonrefundable" and the court found "that word alone could not place the plaintiffs' claims within the safety of the *Wolens* contract exception." *Id.* Here, Aeromexico has breached its contracts with Plaintiff consisting of both the airline ticket issued to Plaintiff as well as Aeromexico's own terms with passengers. Aeromexico has contracted with the Plaintiff and the Class to collect only amounts, including taxes that are "due". Complaint ¶¶28-29. Despite Aeromexico's incorrect characterization, the issue in *Buck* was not a claim by plaintiffs that they were not

---

[2] That section of the FAAAA is virtually identical to the preemption clause at issue in this case pursuant to §41713(b)(1).

**PLNTFF'S OPPO TO DFNDNT AEROVIAS DE MEXICO, SMMRY JDGMNT**

required to pay fees and taxes. *Id.*, at *31. Plaintiff and the Class here merely seek restitution of the funds that were never due but Aeromexico improperly collected. Their claim is for breach of contract for the improper collection of the UK tax. Complaint ¶32. As stated above, Plaintiff is not challenging Aeromexico's price for the airline ticket but rather she is challenging Aeromexico's breaching of its contract and implied covenant of good faith and fair dealing with its passengers and the collection from exempt passengers an amount above and beyond the ticket prices which was not due. *Id.*, ¶¶27-38. *Buck* is therefore inapplicable.

Aeromexico attempts to distinguish *Wolens* by saying that here, the UK fee is a part of the ticket "price" and thus *Morales* is controlling, not *Wolens*. Motion at 5. Aeromexico is, as it impliedly admits, wrong. The UK tax in no way affects the ticket price set by Aeromexico. The UK tax is simply a "tax" levied upon non-exempt passengers traveling to Mexico. As admitted by Aeromexico, a passenger subject to the UK tax "has no choice" but to pay it "because by government action it must be collected from the passenger whenever she or he enters Mexico by air and is not otherwise exempt." Motion at 5. Thus, the UK tax is not part of the ticket price being charged by Aeromexico for air transportation but is a required "fee" or "tax" to be paid by non-exempt passengers. Plaintiff is not claiming that Aeromexico should stop collecting the tax altogether but merely that it should stop wrongfully collecting the tax from Plaintiff and other exempt passengers in violation of state laws. In other words, Plaintiff is not challenging the prices of the airline tickets per se but rather she is challenging the separate collection by Aeromexico from its passengers of a tax not due through breaching its contract and implied covenant of good faith and fair dealing with its passengers and collecting from exempt passengers an amount above and beyond the ticket prices which was not due. The price of the ticket is never implicated in Plaintiff's claims and *Morales* is not applicable. See *Complaint* generally. "A claim relates to airline prices if the

tw:6202.1/oppo sumary judgmnt                    12

claim expressly refers to price or has a significant economic effect upon price." *All World Professional Travel Services, Inc. v. American Airlines, Inc.*, 282 F.Supp.2d 1161, 1169-70 (2003) ("*All World*"). The United States Court of Appeals for "[t]he Ninth Circuit has concluded that Congress intended to preempt only state laws and lawsuits that would adversely affect the economic deregulation of the airlines and the forces of competition within the airline industry." *Id.*, at 1170 (citing *Charas*, 160 F.3d at 1261). As explained above, Plaintiff's claims do not affect economic deregulation nor the forces of competition.

The ADA "was not, however, designed to monitor airlines' contractual undertakings and private, contractual disputes related to airline prices, routes or services" as is the case here. *Aloha Airlines, Inc.*, 2007 U.S. Dist. LEXIS 19484 at *12 (citing *Wolens*, 513 U.S. at 231-32). In finding plaintiff's breach of contract and implied covenant of good faith and fair dealing claims not to be preempted, the *Aloha Airlines, Inc.* court stated that under *Wolens*, "a party may seek relief under state contract law from an airline that has 'dishonored a term the airline itself stipulated' in a contract, without fear of enlarging or enhancing rights under the ADA 'based on state laws or policies external to the agreement.'" *Id.* (citing *Wolens*, 513 U.S. at 232). Here, Aeromexico itself stipulated to not collecting from exempt passengers the UK tax, yet it wrongfully collected the tax from Plaintiff, an exempt passenger, and putative class members. Aeromexico violated its contracts with its travelers.

Plaintiffs in *In re Air Transportation Excise Tax Litigation,* 37 F.Supp.2d 1133 (D. Minn. 1999), like Plaintiff here, brought an action for, *inter alia*, breach of contract, unjust enrichment and money had and received against defendant shipper claiming that despite the fact a federal excise tax had expired, defendant did not change its rates. *Id.*, at 1135. While the court found the breach of contract claim failed as a matter of law, it rejected defendant's assertion that the ADA preempted

plaintiffs' action. Following *Wolens*' recognition that "respecting the remedies of contracting parties, premised upon their own 'self imposed undertakings,' not only does not *interfere* with Congress's deregulatory mandate, but actually *promotes* it, because 'market efficiency requires effective means to enforce private agreements[]'" the court concluded that plaintiffs' breach of contract claim was not preempted by the ADA. *Id.* at *1139-1140 (emphasis in original) (citing *Wolens*, 513 U.S. 219 at 228-30). The court recognized an express contract between plaintiffs and defendant (namely the airbill) and that the contract was "self-imposed' by the parties: [defendant] drafted the shipping contracts and both parties voluntarily agreed to be bound by the contracts' terms". *Id.*, at 1140. It rejected defendant's argument that the breach of contract action was a disguised tort claim and found that plaintiffs' breach of contract claim was not preempted by the ADA. *Id.*, at 1141.[10] Thus, the issue regarding the excise tax, like the issue regarding the UK tax here, was rightfully found not to be related to an air carrier's "prices". Furthermore, the court found that the law of unjust enrichment and money had and received, "unlike the airline advertising rules at issue in *Morales*, do not affirmatively prescribe (or proscribe) the airlines' conduct in a way that impedes competition or adversely impacts the economics of the airline industry." *Id.*, at 1140. (citation omitted).

---

[10] Based on the Supreme Court's ruling in *Wolens* courts nationwide have allowed breach of contract claims to survive alleged ADA preemption. *Monzingo v. Aeromexico Air Group, Inc.*, 112 P.3d 655, (2005) (plaintiffs alleged breach of Aeromexico Airlines' Mileage Plan); *In re Jetblue Airways Corp. Privacy Litigation*, 379 F.Supp.2d at 318 (E.D.N.Y. 2005) (plaintiffs' breach of contract claim not preempted by the ADA); *Aloha Airlines, Inc.*, 2007 U.S. Dist. LEXIS at *20 (Hawaii) (same); *All World Professional Travel Services, Inc. v. American Airlines, Inc.*, 282 F.Supp.2d 1161 (C.D. Cal. 2003) (same); *In re Air Transportation Excise Tax Litigation*, 37 F.Supp.2d 1133 (Minnesota) (same); *Greer v. Federal Express*, 66 F.Supp.2d 870 (W.D.Ken. 1999) (the ADA does not completely preempt breach of contract claim).

Doc id

Similarly, Plaintiff's claims here do not relate to prices and are not preempted by the ADA.

### 2.    Plaintiff's Claims Do Not Relate to the Routes Serviced by Aeromexico

Next, Aeromexico attempts to convince this Court that the litigation somehow concerns "routes" as that term is used in the ADA and thus preempts Plaintiff's claims. Motion at 8. Just because the UK tax is levied on passengers traveling to Mexico does not mean that a claim for unlawfully levied taxes affects the "route" to Mexico. "[R]outes [as used in the ADA] indicate courses of travel" only. *Tall Club of Silicon Valley*, 2000 U.S. Dist. LEXIS at \*9 (citing *Charas*, 160 F.3d at 1265). Again, Plaintiff is not attempting to regulate the "route" to Mexico. Plaintiff merely wants restitution for wrongfully collected taxes. The "route" remains unencumbered, Aeromexico remains free to map out its route to Mexico, or any other course of travel. Thus, Plaintiff's claims are further not preempted by the ADA.

### 3.    Plaintiff's Claims Do Not Relate to Services Provided by Aeromexico

Finally, Aeromexico asserts ADA preemption on the alleged ground that Plaintiff's claims relate to "service" as defined by the ADA. Motion at 8-9. Aeromexico claims that the collection of the UK tax is a "service provided to both the government of Mexico and passengers." *Id.*, at 8. Aeromexico is mistaken. Just because Aeromexico calls the collection of the UK tax a "service" does not make it so.

As the Ninth Circuit has made clear, the term "service" when juxtaposed to "rates" and "routes" as used in the ADA, "refers to such things as the frequency and scheduling of transportation, and to the selection of markets to or from which transportation is provided (as in, 'This airline provides service from Tucson to New

Doc id

York twice a day.')". *Charas*, 160 F.3d at 1265-66. It clearly does not refer to the improper collection of taxes upon exempt passengers as alleged by Plaintiff Sanchez. "To interpret "service" more broadly [as Aeromexico does] is to ignore the context of its use; and, it effectively would result in the preemption of virtually everything an airline does. *Id.* at 1266. That is "not what Congress intended." *Id.* Based on *Charas*, Plaintiff's claims regarding breach of contract for the improper collection of the UK tax has nothing to do with the scheduling of transportation nor the selection of markets and thus is not considered a "service."

Aeromexico's claim that the collection of the UK fee is a "'service' which affects competition within the airline industry" and that if it did not provide this "service" it would be at a "disadvantage" because "passengers would have more difficulty entering or leaving Mexico" or because its dealings with Mexico would be affected is also wrong. Motion 10. Aeromexico confuses the issues in this case. Plaintiff is not claiming that the UK fee should not be collected or that Aeromexico should alter the point of collection during passengers' travel. Plaintiff merely alleges that pursuant to its own promises to passengers, Aeromexico should refrain from collecting the UK fee from exempt passengers; the collection of which is a breach of Aeromexico's own contracts with consumers and is not required by the Mexican government. In fact, Aeromexico may benefit from observing its competitors who fly into Mexico who also collect the UK fee from their passengers but who ensure exempt passengers do not pay the inapplicable fee. Instead, Aeromexico unlawfully collects and is enriched by its improper conduct in violation of state law.

Congress used "service" in the ADA "in the public utility sense – *i.e.*, the provision of air transportation to and from various markets at various times." *Id.* "In such a context, "'service' does not refer to … assistance to passengers in need, or like functions." *Id.* As stated in *In re Air Transportation Excise Tax Litigation*,

tw:6202.1/oppo sumary judgmnt                16

**PLNTFF'S OPPO TO DFNDNT AEROVIAS DE MEXICO, SMMRY JDGMNT**

"Congress surely did not pass the ADA to give the airlines carte blanche to convert property or unjustly enrich themselves willy-nilly, immunized from state law consequences." 37 F.Supp.2d at 1140. Plaintiff's claims are not preempted by the ADA and Aeromexico's Motion should be denied.

Moreover, Plaintiff's related claims stemming from Aeromexico's breach of contract are not preempted either. *Id.* (finding plaintiffs' breach of contract, unjust enrichment and money had and received claims not preempted); *Jetblue Airways Corp. Privacy Litigation*, 379 F.Supp.2d at 320 (unjust enrichment claim not preempted by the ADA); *All World Professional Travel Services, Inc.*, 282 F.Supp.2d 1161 (same); *Aloha Airlines, Inc.*, 2007 U.S. Dist. LEXIS 19484 (breach of contract and implied covenant of good faith and fair dealing not preempted); *Power Travel International, Inc. v. American Airlines, Inc. etc. et al.*, 257 F.Supp.2d 701, 707 (S.D.N.Y. 2003) (covenant of good faith and fair dealing functions as a residual gap-filling default rule of contract law and is an elementary concept of law of contracts. "The covenant of good faith and fair dealing further does not implicate the fundamental purpose behind the ADA" and like the breach of contract claim is not preempted).

### 4.    The ADA's Savings Clause Also Precludes Preemption

Consistent with the Congressional intent *not* to preempt traditional state law regulation in areas such as breach of contract, the ADA has a "savings clause" that preserves Plaintiff's claims. See 49 U.S.C. §40120. This provision provides "[a] remedy under this part [49 U.S.C. §40101 *et seq.*] is in addition to any other remedies provided by law." The Ninth Circuit has held that:

> [T]he savings clause … read together with the preemption clause, evidences congressional intent to prohibit states from regulating the airlines while preserving state tort remedies that already existed at common law … .

*Charas v. TWA*, 160 F.3d 1259, 1265 (9th Cir. 1998) (citing as 49 U.S.C. §40120).

tw:6202.1/oppo sumary judgmnt                    17

See also *Wolens*, 513 U.S. at 232. The same is true of the state law claims brought here. Indeed, state law regulation of breach of contract claims long-predates the adoption of the ADA in 1978. The ADA's savings clause further evinces Congressional intent to preserve traditional state law regulation of breach of contract and related claims.

### B.    THE MONTREAL CONVENTION DOES NOT PREEMPT PLAINTIFF'S CLAIMS

In support of its argument that the Montreal Convention preempts Plaintiff's claims Aeromexico relies on two cases: *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 119 S.Ct. 662, 142 L.Ed.2d 569 (1991) and *Mbaba v. Societe Air France*, 457 F.3d 496 (5th Cir. 2006), *cert denied*, 127 S.Ct. 959 (2007). Neither case applies to the facts at hand and the Montreal Convention does not preempt Plaintiff's claims.

The Montreal Convention went in to effect on November 4, 2003 and updated and replaced the uniform system of liability for international air carriers contained in the Warsaw Convention. *Nigeria Charter Flights Contract Litigation*, 2007 U.S. Dist. LEXIS 79351, *10 (E.D.N.Y. 2007) ("*Nigeria Charter*") (internal citation omitted). In addition to the Warsaw Convention's purpose to encourage the development of commercial aviation by limiting liability, the Montreal Convention "reflects an additional consideration: 'the importance of ensuring protection of the interests of consumers in international carriage by air and the need for equitable compensation based on the principle of restitution.'" *Id.*, (quoting Montreal Convention preamble). Thus, the Montreal Convention shifts away from the Warsaw Convention's favoring of airlines "to one that continues to protect airlines from crippling liability, but shows increased concern for the rights of passengers and shippers." *Weiss v. El Al Israel Airlines, Ltd.*, 433 F.Supp. 2d 361, 365 2006 U.S. Dist. LEXIS 32563 (S.D.N.Y. 2006).

tw:6202.1/oppo sumary judgmnt                18

Pursuant to Chapter III, Articles 17, 18 and 19 of the Montreal Convention, the three kinds of liability for which the Convention provides *exclusive remedy* includes personal injury to passengers, damage to cargo and damage caused by delay. Article 29 of the Montreal Convention indicates "that for all air transportation to which the Convention applies, if an action for damages, however founded, falls within one [of] the Convention's *three damage provisions*, the Convention provides *the sole cause of action* under which a claimant may seek redress for his injuries." *Weiss*, 433 F.Supp.2d at 365 (emphasis added) (citing *Tseng*, 525 U.S. at 176 [interpreting Warsaw Convention]); *Shah v. Pan Am World Servs., Inc.*, 148 F.3d 84, 97-98 (2d Circ. 1998) [same]; *Paradis v. Ghana Airways Ltd.*, 348 F.Supp.2d 106, 111 (S.D.N.Y. 2004) [noting preemptive effect of Montreal Convention is substantially the same as that of Warsaw Convention]). However, for the Convention to govern other claims, "the incident giving rise to the claim must take place on board the aircraft or in the course of any of the operations of embarking or disembarking." *Aquino v. Asiana Airlines, Inc.*, 105 Cal.App.4th 1272, 1279, 130 Cal.Rptr. 2d 223, 228 (2003).

"Courts have found the Warsaw Convention inapplicable, however, where passengers were still in common areas, were not under the control of airline personnel, or were not physically near the departure gate." *Id.*, at 1280 (citation omitted); *Tseng*, 525 U.S. at 176 (interpreting Warsaw Convention). Moreover, the drafting conference of the Warsaw Convention (like the Montreal Convention) determined that the Convention should not apply to a case of nonperformance of a contract because in such a case the injured party has a remedy under the law of his or her own country.[11] *Weiss*, 433 F.Supp.2d at 366 (citation omitted); see also *Nigeria Charter*, 2007 U.S. Dist. LEXIS at *17 (same).

---

[11] The proper interpretation of the treaty's terms involves consideration not only of the text, but also the drafting history and post-ratification understanding of the

Doc id

Defendant's reliance on *Tseng* for the assertion that the Warsaw Convention exclusively governs and preempts state actions is misplaced. Motion at 14. *Tseng* addressed a question not present here, that is the "question of whether Article 17 of the Warsaw Convention applied to all personal injury claims formally within the ambit of its terms." *Weiss*, 433 F.Supp. 2d at 368 (citing *Tseng*, 525 U.S. 167). However, *Tseng* also "counseled against a 'miserly' construction of the Warsaw Convention's terms." *Id.* There, "the Supreme Court addressed the issue of whether plaintiffs may bring state law claims when those claims are also covered by the Convention." *Brandt v. American Airlines,* 2000 U.S. Dist. LEXIS 3164, *11 (N.D.Cal. 2000). However, the Supreme Court noted that "[o]f course, if plaintiffs' claims are not within the scope of the [] Convention, they may bring such causes of actions available under state or federal law." *Id.*, *13, n. 5 (citation omitted). Here, Plaintiff's claims constitute contractual nonperformance claims "redressable under local law and not [injury or damage] for which the Convention supplies the exclusive remedy." *Weiss*, 433 F.Supp.2d at 368 (citation omitted).

Despite Aeromexico's contention to the contrary (Motion at 12), the Ninth Circuit has opined, in dicta, that causes of action available under the Warsaw Convention **are not exclusive**. See *Johnson v. American Airlines, Inc.*, 834 F.2d 721, 723 (9th Cir. 1987) (asserting without discussion that "state-law claims allowing damages for injuries to goods in international air transportation can only be maintained subject to the conditions and limits outlined in the Warsaw Convention."); *In re Mexico City Aircrash of Oct. 31, 1979*, 708 F.2d 400, 414, n. 25 (9th Cir. 1983) (stating in dicta that "the delegates [to the Warsaw Convention] did not intend that the cause of action created by the Convention to be exclusive. In the United States, state law causes of action may be invoked by plaintiffs injured

contracting parties. *Tseng*, 525 U.S. at 167.

tw:6202.1/oppo sumary judgmnt            20

Doc id

during international air transportation."); *In re Aircrash in Bali, Indonesia on Apr. 22, 1974,* 684 F.2d 1301, 1311 & n.8 (9th Cir. 1982) (noting in dicta that "the Convention has never been read to limit plaintiffs to a cause of action arising there under, but rather to limit the recovery in suits for injury").

Because Plaintiff's claims here do not involve delay, personal injury or damage to cargo and Plaintiff's damages did not occur during embarking or disembarking, the Montreal Convention has no applicability. Accordingly, Plaintiff was not obligated to assert claims under the Convention and her claims should not be dismissed. Instead, Plaintiff's claims arise from Aeromexico's breach, that is, nonperformance, of its contracts with passengers and state law provides adequate remedy to Plaintiff in such a case. *Weiss*, 433 F.Supp.2d at 366 (citation omitted); see also *Nigeria Charter*, 2007 U.S. Dist. LEXIS at *17 (same). Therefore, the Montreal Convention is not implicated. Since Plaintiff's claims are not within the Montreal Convention, she may bring suit under state law as Plaintiff has done so here and Defendant's Motion should be denied.

In *Nigeria Charter*, passengers sued various parties for cancelled flights for, *inter alia*, breach of contract claims. 2007 U.S. Dist. LEXIS at *3-*8. Defendants moved for summary judgment claiming the Montreal Convention preempted plaintiffs' state law claims. *Id.* at *8. In its interpretation of Article 19 and 29 of the Montreal Convention, the court found that the plaintiffs were alleging nonperformance, not delay, and thus the Montreal Convention did not preempt plaintiffs' state law claims. *Id.*, at *12-*13.

The *Nigeria Charter* court further distinguished the case from *Tseng* by recognizing that at issue in *Tseng* was whether the plaintiff's state law claim based on psychological harm was preempted by Article 17 of the Warsaw Convention, which made air carriers liable for injuries sustained in the event of wounding or any other bodily injury of a passenger, if the accident causing the damage took place on

tw:6202.1/oppo sumary judgmnt                    21

Doc id

board the aircraft or in the course of embarking or disembarking. *Id.*, at *18. The *Tseng* court held that the plaintiff's claim was within the scope of Article 17which covered all personal injury stemming from an occurrence on board an aircraft or in embarking or disembarking. *Id.*, at *19. On this basis, it held pursuant to Article 17 plaintiff was precluded from pursuing her claim under state law. *Id.* "The Court noted, however, that the plaintiff's state law claim would *not* have been preempted if it had been outside Article 17's scope." *Id.*

Here too Plaintiff sets forth state, breach of contract claims and thus the Montreal Convention does not preempt such claims. Aeromexico's argument that Article 29 demands that "any action arising out of the carriage can only be brought subject to the conditions of the Convention" does not change the fact that Plaintiff has pled adequate state law claims and seeks adequate state remedy outside of the Convention's scope. Only if Plaintiff was claiming personal injury, damage to cargo or damage to baggage would she be limited to pursuing claims solely through the Convention.

Aeromexico also wrongly cites to *Mbaba v. Societe Air France,* 457 F.3d 496, 500 (9th Circ. 2006), *cert. denied,* 127 S.Ct. 959 (2007) for its assertion that "the Montreal Convention provides the sole basis for any claim involving international carriage." Motion at 17. Plaintiff's claims in *Mbaba* were for damage that occurred during check-in, that is during the embarking process for his trip and the court rightfully found that as such, his claims were preempted. *Id.* at 497. That is not the case here. Sanchez was not engaged in the embarking process at the time of her injury or damage.

Moreover, in *Mbaba* plaintiff was damaged by having to pay extra baggage fees and Article 24 specifically preempts claims resulting from the carriage of baggage. *Id.*, at 497, 500. Thus, plaintiff's claims were specifically preempted. However, the Supreme Court in *Tseng* clearly stated:

tw:6202.1/oppo sumary judgmnt                    22

Doc id

**PLNTFF'S OPPO TO DFNDNT AEROVIAS DE MEXICO, SMMRY JDGMNT**

[T]he Convention's preemptive effect on local law extends no further than the Convention's own substantive scope. . . . A carrier therefore, is indisputably subject to liability under local law for injuries arising out of that scope: *e.g.*, for passenger injuries occurring before any of the operations of embarking or disembarking. *Id.*, at 172.

"The question of whether a passenger is involved in any of the operations of embarking is a question of law to be decided based on the facts of each case." *Aquino*, 105 Cal.App.4th at 1279, 130 Cal.Rptr. 2d at 228 (citing *Schmidkunz v. Scandinavian Airlines System*, 628 F.2d 1205, 1207 (9th Cir. 1980). Courts apply a test that examines the totality of the circumstances. *Id.* (citation omitted). Several factors are considered, including, (1) the activity of the passengers at the time of the event; (2) the restrictions, if any, on their movements; (3) the imminence of actual boarding; and (4) the physical proximity of the passengers to the gate. *Id.* (citations omitted). "Courts have found the Warsaw Convention inapplicable, [], where passengers were still in common areas, were not under the control of airline personnel, or were not physically near the departure gate." *Id.*,at 1280 (citations omitted).

In *Aquino*, the court found that plaintiffs who were in a common area at the time of events giving rise to the action (in an attempt to check-in) were not yet within the ambit of the Convention. *Id.* The plaintiffs had not checked their luggage, had not received boarding passes, and had not gone through security to a restricted area. *Id.* Neither defendants nor the court itself, through its independent research could find "any case extending the reach of the Warsaw Convention to the stage of attempting to check in." *Id.* at 1281.

Here, Plaintiff's injuries occurred *at the time of purchase of her airline ticket* (although she did not discover that her claim accrued until she met with counsel in August 2007), that is, well before any process of embarking. In fact, Plaintiff

Doc id

PLNTFF'S OPPO TO DFNDNT AEROVIAS DE MEXICO, SMMRY JDGMNT

purchased her airline ticket and was damaged by having to pay for a tax from which she was exempt before her date of travel. Plaintiff was not even attempting to check-in when the illegal charge was assessed upon her. Thus, Plaintiff's damage clearly occurred outside the scope of the Convention, that is, outside the scope of embarking or disembarking, and the Montreal Convention has no application to the facts of this case.

## V.    CONCLUSION

For the reasons stated herein Defendant's Motion should be denied in its entirety.

Dated:  February 19, 2008                  **THE ROSSBACHER FIRM**

By
Henry H. Rossbacher

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT,
## CENTRAL DISTRICT OF CALIFORNIA

**CASE NAME:**    **MARIA SANCHEZ v. AEROVIAS DE MEXICO, S.A. DE C.V., doing business as AEROMEXICO**

**CASE NUMBER:CV 07-7280 R (RCx)**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 811 Wilshire Blvd., Ste. 1650, Los Angeles, California 90017-2666.

On February 19, 2008, I served the following document on the parties in this action listed below in the manner designated below:

**PLAINTIFF'S OPPOSITION TO DEFENDANT AEROVIAS DE MEXICO, S.A. DE C.V. MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

| |
|---|
| Frank A. Silane, Esq.<br>Jennifer J. Johnston, Esq.<br>CONDON & FORSYTH LLP<br>1901 Avenue of the Stars, Suite 850<br>Los Angeles, California 90067-6010<br>Email: fsilane@condonlaw.com<br>jjohnston@condonlaw.com<br><br>Attorneys for Defendants |

**BY NOTICE OF ELECTRONIC FILING**. The above-listed counsel have consented to electronic service and have been automatically served by the Notice of Electronic Filing, which is automatically generated by CM/ECF at the time said document was filed, and which constitutes service pursuant to FRCP 5(b)(2)(D).

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 19, 2008, at Los Angeles, California

*/s/ Tina Walling*
Tina Walling

tw:6202.1/oppo sumary judgmnt

PLNTFF'S OPPO TO DFNDNT AEROVIAS DE MEXICO, SMMRY JDGMNT